UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Hmong College Prep Academy, | Case No. 21-CV-1721 (PAM/BRT) |
| Plaintiff, | |
| v. | **RULE 26(f) REPORT** |
| Woodstock Capital, LLC, and Clark Reiner, | |
| Defendant. | |

The parties/counsel identified below conferred as required by Fed. R. Civ. P. 26(f), the Local Rules, and the Court's October 14, 2021 Order, and prepared the following report.

The initial pretrial conference required under Fed. R. Civ. P. 16 and LR 16.2 is scheduled for November 16, 2021 at 10:00 a.m., before the United States Magistrate Judge Becky R. Thorson to be conducted by Zoom video conference call.

RULE 7.1 DISCLOSURES

The parties must comply with Rule 7.1, if applicable:

1.      For plaintiff: **Plaintiff Hmong College Prep Academy ("HCPA") filed its Rule 7.1 Corporate Disclosure Statement on November 11, 2021.**

**2.**      For defendant: **Defendant has filed its Rule 7.1 Corporate Disclosure Statement.**

DESCRIPTION OF THE CASE

1.      Concise factual summary of plaintiff's claims:

**Plaintiff HCPA brings this lawsuit seeking relief against Defendants Woodstock and Clark Reiner for their fraud, negligence, and contractual breaches relating to HCPA's $5 million investment in Defendants' hedge fund.**

In August 2019, HCPA was contacted by Defendants' agent, Paul Brown, to explore whether HCPA wanted to invest in Defendants' hedge fund. During a call that took place on or about August 16, 2019, Dr. Hang, HCPA's superintendent, asked whether the money contributed to the fund by HCPA would be invested in a manner consistent with Minn. Stat. § 118A and HCPA's investment policy. In response, Bill Miller, an attorney acting on behalf of Defendants, indicated that it would be. Subsequently, Defendant Clark Reiner introduced himself to Dr. Hang and made similar representations. Defendants also executed a Side Letter memorializing Defendants' agreement to invest HCPA's funds in accordance with HCPA's stated investment parameters. Defendants further used this letter to reassure HCPA when HCPA expressed concerns based upon an opinion it had received from its attorney.

In reliance upon Defendants' representations, HCPA agreed to become a limited partner in Woodstock Capital Partners, LP. Monthly statements provided to HCPA began to show significant decreases in HCPA's account, and HCPA contacted Defendants multiple times to ensure HCPA's investment was secure. HCPA was repeatedly assured that those statements only illustrated "draw-downs" as the contribution money was invested, and not losses to HCPA's investment. Woodstock also committed to buying out HCPA's interest in the partnership, repeating that commitment on multiple occasions. Finally, on April 29, 2021, Woodstock, through legal counsel, sent a letter to HCPA admitting that they had failed to invest HCPA's funds in accordance with HCPA's investment parameters, and that the previous representations about the monthly statements were false.

To date, HCPA has made repeated demands under the parties' contract to provide an explanation of what has happened to HCPA's funds, but no explanation has been provided. Woodstock has similarly not fulfilled its contractual obligation to furnish audited financial statements at any point since HCPA became a limited partner of Woodstock Capital Partners, LP in 2019.

2.      Concise factual summary of defendant's claims/defenses:

Woodstock Capital, LLC ("Woodstock GP"), a New Jersey limited liability company, is the general partner and manager of Woodstock, LP, a Delaware limited partnership, and a hedge fund operating in the Cayman Islands (collectively the "Woodstock Hedge Fund"). Defendant Reiner is one of two members and officers of Woodstock GP. As with most hedge funds, Woodstock Hedge Fund published fund documents describing the nature of the fund, its investments, and the risks inherent in the investment strategies of the fund.

In late August 2019 Plaintiff's superintendent, Dr. Christianna Hang, approached Defendant seeking to invest HCPA's funds in a hedge fund hoping to receive high returns for a school construction project. After receiving the relevant

fund documents, on September 10 HCPA invested $5 million into the hedge fund, even though its attorney cautioned Hang that the Fund's strategies was inconsistent with HCPA's investment restrictions and Minnesota law.

Although HCPA alleges that Defendant Reiner verbally assured Hang that the Woodstock Hedge Fund's investment strategies complied with Minnesota law, Defendants deny any assurances or opinions were given. Indeed, a letter sent to Hang confirms the general investment strategy as described in the Fund documents. Furthermore, a recent state auditor's investigation confirmed that Woodstock Hedge Fund's documents clearly described the high-risk nature of the fund's investment strategy which did not comply with the more conservative requirements under Minnesota law.

In October 2019 the Woodstock Hedge Fund began investing at probably the most inopportune time in recent history. Within months the global economy was shut down and collapsed due to COVID-19. The investments made by the fund were substantially lost. By the time Woodstock liquidated its investments in September 2020 the value of HCPA's interest had decreased by $4.3 million.

In early 2021, during settlement discussions between Plaintiff's counsel and Defendants' counsel (not the undersigned), Defense counsel allegedly made statements suggesting that Woodstock GP would try to make HCPA whole by finding funds to reimburse them for the entire loss. Although there was no "promise," let alone justifiable reliance upon such a promise, that Defendants would be able to do so, Plaintiff used these events as the basis for its promissory estoppel claim.

Presently, the Woodstock Hedge Fund is in the process of obtaining a final audit of the fund's financial statements, which is being conducted by the internationally respected accounting firm of Grant Thornton. Although this audit should have been completed earlier this year, a third-party financial institution has delayed or refused to provide necessary documentation regarding its fees charged to the fund that are required by Grant Thornton to complete the audit. Defendants are still awaiting this audit and when it is finalized it will be provided to Plaintiff HCPA.

3.     Statement of jurisdiction (including statutory citations):

The amount in controversy exceeds $75,000, and there is complete diversity of citizenship in this action. This Court, therefore, has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

4.     Summary of factual stipulations or agreements:

None at this time.

3

5.      Statement of whether a jury trial has been timely demanded by any party:

**HCPA has demanded a jury trial within the time limits set forth in Federal Rule of Civil Procedure 38(b)(1).**

**Defendants Woodstock and Clark Reiner do not request a jury trial.**

6.      Statement as to whether the parties agree to resolve the matter under the Rules of Procedure for Expedited Trials of the United States District Court, District of Minnesota, if applicable:

**N/A**

PLEADINGS

Statement as to whether all process has been served, all pleadings filed and any plan for any party to amend pleadings or add additional parties to the action:

**Defendants Woodstock and Clark Reiner have been properly served. Defendants Woodstock and Clark Reiner filed a motion to dismiss the Complaint on July 28, 2021, which was denied. Defendants Woodstock and Clark Reiner filed and served their Answer to the Complaint on October 21, 2021. None of the parties currently plan to amend the pleadings or add additional parties.**

DISCOVERY OF ELECTRONICALLY STORED INFORMATION

The parties have discussed the scope of electronic discovery, including relevance and proportionality, and any issues about preserving electronic discovery. The parties have also discussed the form or forms in which electronic discovery should be produced.  They inform the Court of the following agreements or issues:

The parties will further meet and confer by **December 13, 2021**, to discuss their plan or formal protocol for electronic discovery. They agree to present any disputes regarding an electronic discovery plan and protocol to the Court by **December 20, 2021**.

FACT DISCOVERY

The parties should agree on their proposed plan using this form. To the extent that the parties cannot reach agreement on any particular item about scheduling or discovery, they should set forth their separate positions in their Rule 26(f) Report for discussion at the pretrial conference.

The parties recommend that the Court establish the following fact discovery deadlines and limitations:

1.  The parties must make their initial disclosures under Fed. R. Civ. P. 26(a)(1) on or before **November 30, 2021**. If the parties plan to disclose documents by a description by category and location of documents, they will exchange copies of initial disclosure documents on or before **December 16, 2021**.

2.  The parties must commence fact discovery procedures in time to be completed by **May 31, 2022**. The parties will discuss whether a date for the substantial production of documents should be set within the fact discovery period, to facilitate the taking of depositions.

3.  The parties have discussed the scope of discovery including relevance and proportionality and propose that the Court limit the use and numbers of discovery procedures as follows:

    a.  **25** interrogatories;

    b.  **30** document requests; The parties understand that objections to document requests must meet the requirements of amended Rule 34(b)(2)(B). For the parties' convenience, the Rule is set forth below:

    Rule 34

    (b) PROCEDURE.

    (2) *Responses and Objections.*

    (B) *Responding to Each Item.* For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons. The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection. The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response.

If the responding party producing copies of documents or copies of electronically stored information and the copies are not produced with the responses, another reasonable time must be specified in the response. If the requesting party disagrees that this is reasonable, the parties must meet and confer to agree on the timetable for production.

c.       **25** requests for admissions, excluding requests for admissions for the purposes of authenticating documents. The parties have discussed a protocol for the authentication of documents and agree on the following:

**The parties agree to meet and confer in good faith regarding a protocol for the authentication of documents.**

d.       **6** per side factual depositions (including 30(b)(6) and third-party depositions). The parties have discussed the geographical location for the depositions and agree on the following:

**If party witness depositions are held in person, then there will be a presumption that they will take place in Minnesota. If any party witness deposition(s) will be held instead by videoconference, then there will be a presumption that all party witness depositions will be held by videoconference unless otherwise agreed to by the parties.**

e.       The parties have discussed the taking of depositions pursuant to Rule 30(b)(6) and present the following agreement:

**The parties agree on 1 (one) Rule 30(b)(6) deposition per side of no more than 7 (seven) hours.**

The parties should consider whether they should agree on a deadline for serving 30(b)(6) notices of deposition.

**The parties agree to serve Rule 30(b)(6) deposition notices, if any, by April 14, 2022.**

f.       The parties have discussed Rule 35 medical examinations and agree to _____. The parties must complete any physical or mental examinations under Fed. R. Civ. P. 35 by _____.  **N/A**

g.       _____ other. **N/A**

## EXPERT DISCOVERY

1.       The parties anticipate that they **will likely** require expert witnesses at the time of trial.

a.   The plaintiff anticipates calling _____ (number) experts in the fields of: _____.

**HCPA has not yet determined the number of expert witnesses that will be required, nor has it determined the fields of those experts.**

b.   The defendant anticipates calling **two (2)** experts in the fields of: **(1) Hedge fund organization, operation, and management; and (2) financial/economic markets during the COVID-19 pandemic and its effect on financial investments.**

c.   The parties must meet and confer to confirm the fields (not necessarily the identity of the expert witnesses) on or before **April 14, 2022**.

2.   The parties propose that the Court establish the following plan for expert discovery:

The parties must discuss the particular expert needs in the case and then carefully tailor their recommended plan for disclosure of experts, service of reports and timing of depositions. Three options are provided below:

OPTION A:

**HCPA: Option A**

a.   Initial experts.

   i.   The identity of any expert who may testify at trial regarding issues on which the party has the burden of persuasion must be disclosed on or before **May 16, 2022**.

   ii.   The initial expert written report completed in accordance with Fed. R. Civ. P. 26(a)(2)(B) must be served on or before **July 25, 2022**.

b.   Rebuttal experts.

   i.   The identity of any experts who may testify in rebuttal to any initial expert must be disclosed on or before **June 16, 2022**.

   ii.   Any rebuttal expert's written report completed in accordance with Fed. R. Civ. P. 26(a)(2)(B) must be served on or before **August 19, 2022**.

c.     All expert discovery, including expert depositions, must be completed by **September 30, 2022**. The parties must meet and confer to coordinate expert depositions.  This conference should immediately follow the disclosure of the experts so that all expert depositions can be coordinated and completed on time. The parties must inform their experts about the deadlines for expert disclosures and depositions in this Scheduling Order.

d.     Each side may call up to **2** experts. Each side may take 1 deposition per expert.

OPTION B:

a.     The plaintiff anticipates calling up to ___ experts in the fields of _____. The defendant anticipates calling up to ____ experts in the fields of _____.

b.     The identity of Plaintiffs' experts must be disclosed on or before _____. (Plaintiff's initial experts)

c.     The identity of Defendant's experts must be disclosed on or before _____. (Defendant's initial experts)

d.     The initial expert written report(s) (Plaintiff's and Defendant's), completed in accordance with Fed. R. Civ. P. 26(a)(2)(B), must be served on or before _____.

e.     The identity of any experts who may testify in rebuttal to any initial expert must be disclosed on or before _____.

f.     Any rebuttal expert written report(s) completed in accordance with Fed. R. Civ. P. 26(a)(2)(B) must be served on or before _____.

g.     All expert discovery, including expert depositions, must be completed by _____. The parties must meet and confer to coordinate expert depositions immediately following each disclosure of experts so that all expert depositions can be coordinated and completed on time. The parties must inform their experts about the deadlines for expert disclosures and depositions in this Scheduling Order.

h. Each side may call up to _____ experts. Each side may take 1 deposition per expert.

OPTION C:

a. Plaintiff will identify any expert who may testify at trial on behalf of Plaintiff and the initial expert written report(s) completed in accordance with Fed. R. Civ. P. 26(a)(2)(B) must be served on or before _____.

b. The identity and any expert written rebuttal reports by Defendants to Plaintiff's expert(s) must be served on or before_____.

c. The identity of any experts (non-rebuttal) who may testify on behalf of Defendants and any expert written report(s) completed in accordance with Fed. R. Civ. P. 26 (a)(2)(B) must be served on or before _____.

d. The identity and any expert written rebuttal reports by Plaintiff to Defendants' (non-rebuttal) expert(s) must be served on or before _____.

e. All expert discovery, including expert depositions, must be completed by _____. The parties must meet and confer to coordinate expert depositions. This conference should immediately follow the disclosure of the experts so that all expert depositions can be coordinated and completed on time. The parties must inform their experts about the deadlines for expert disclosures and depositions in this Scheduling Order.

f. Each side may call up to ___ experts. Each side may take 1 deposition per expert.

PROPOSED MOTION SCHEDULE

The parties propose the following deadlines for filing motions:

1. Motions seeking to join other parties must be filed and served by **February 28, 2022**. The parties are aware that they must diligently pursue any investigation or discovery using the appropriate discovery tools available to meet this deadline.

2.      Motions seeking to amend the pleadings must be filed and served by **February 28, 2022**. The parties are aware that they must diligently pursue any investigation or discovery using the appropriate discovery tools available to meet this deadline.

3.      **[ONLY IF APPLICABLE]** Motions seeking an amendment of the pleadings to add punitive damages must be filed and served by

      **June 17, 2022**.

4.      Non-dispositive motions.

      OPTION A:

      All other non-dispositive motions must be filed and served by_____. The parties must meet and confer to resolve fact discovery disputes when they arise, and if unresolved, bring discovery disputes promptly to the Court's attention.

      OPTION B:

**HCPA:  Option B**

      a.      All non-dispositive motions relating to fact discovery must be filed and served by **June 17, 2022**.

      b.      All other non-dispositive motions, including motions relating to expert discovery, must be filed and served by **September 22, 2022**.

5.      Dispositive motions

All dispositive motions must be filed and served by **October 24, 2022**.

PROTECTIVE ORDER

The parties have discussed whether they believe that a protective order is necessary to govern discovery and jointly submit a [proposed] protective order/report identifying areas of disagreement.

The parties **DO NOT intend to** seek the entry of a protective order, **but may decide one is necessary during the litigation. If so, the parties will submit a proposed stipulated protective order substantially similar to the form on the Court's website**.

The parties will start with the form available on the Court's website under the Court Forms tab in the "Pretrial, Discovery and Trial Forms" section as a base template for their proposed protective order. http://www.mnd.uscourts.gov/local_rules/forms/Stipulation-for-Protective-Order-Form.pdf. The parties understand that they may tailor a proposed protective order to their case and will redline suggested modifications to the form.

CLAIMS OF PRIVILEGE OR PROTECTION

The parties have discussed issues regarding the protection of information by a privilege or the work-product doctrine, as required by Fed. R. Civ. P. 26(f)(3)(D), including whether the parties agree to a procedure to assert these claims after production or have any other agreements under Fed. R. Evidence 502:

1.   Request the Court to include the following agreement in the scheduling order; or

**2.   Will include their agreement in their proposed Protective Order.**

TRIAL-READY DATE

1.   the parties agree that the case will be ready for trial on or after **February 6, 2023**

2.   The anticipated length of the **Jury** trial is **two (2) weeks**.

INSURANCE CARRIERS/INDEMNITORS

List all insurance carriers/indemnitors, including limits of coverage of each defendant or statement that the defendant is self-insured.

**NONE**

SETTLEMENT

1.   Counsel must meet before the scheduled pretrial conference pursuant to Rule 26(f) of the Federal Rules of Civil Procedure and Local Rule 26.1 to discuss settlement.  No later than three business days prior to the pretrial conference, the parties must prepare and file a joint Rule 26(f) Report in compliance with the rules. Please e-mail a copy to Magistrate Judge Thorson at thorson_chambers@mnd.uscourts.gov. In addition, the parties must send Magistrate Judge Thorson a confidential letter setting forth what settlement discussions have taken place, whether the party believes and early settlement conference would be productive and when it should occur, and what discovery, if any, the party believes would be necessary to conduct before such a conference. The Court will discuss this topic with the parties at the

pretrial conference and will set a date for an early settlement conference or for a status conference to determine when the case will be ready for a productive settlement conference.

2.   The parties propose that a settlement conference be scheduled to take place before _____.

      **The parties propose that they engage in mediation through the good offices of the Magistrate Judge at a time yet to be determined but not later than three weeks after the close of discovery, unless otherwise agreed to by the parties.**

3.   The parties have discussed whether other alternative dispute resolution will be helpful to the resolution of this case and recommend the following:

      **See above.**

<u>TRIAL BY MAGISTRATE JUDGE</u>

      The parties **have not** agreed to consent to jurisdiction by the Magistrate Judge under 28 U.S.C. § 636(c). (If the parties agree to consent, file the consent with the Rule 26(f) Report.)

Dated: November 11, 2021                    **MASLON LLP**

                                            *s/John T. Duffey*_____
                                            John T. Duffey, Reg. No. 0392157
                                            Clayton J. Carlson, Reg No. 0401182
                                            3300 Wells Fargo Center
                                            90 South Seventh Street
                                            Minneapolis, MN  55402-4140
                                            john.duffey@maslon.com
                                            clayton.carlson@maslon.com
                                            (612) 672-8200

                                            *Attorneys for Plaintiff Hmong College Prep Academy*

Dated: November 11, 2021                    **MEYER LAW OFFICE**


<u>*s/Mathew M. Meyer*</u>
Mathew M. Meyer, Reg. No. 0264416
437 4<u>th</u> Ave. East
Shakopee, MN 55379
<u>mathew@mathewmeyerlaw.com</u>
(612) 741-4732

*Attorney for Defendants Woodstock Capital,*
*LLC and Clark Reiner*